Defendant-appellant, Donald Cox ("Don"), appeals a decision of the Fayette County Court of Common Pleas granting him a divorce from plaintiff-appellee, Janice Cox ("Kay"), and ordering that the marital residence be sold and the net proceeds divided equally between the parties.
The record reveals the following facts pertinent to this appeal: The parties were married on July 28, 1987, and no children were born of the union. Less than one year into the marriage, in May of 1988, Don suffered a serious work-related injury that left him unable to undertake gainful employment. As a consequence of the injury, Don and Kay hired a law firm to jointly represent them in a personal injury lawsuit against Don's former employer. The lawsuit sought compensation for Don's loss of wages, both past and future, Don's pain and suffering, and Kay's loss of consortium. Most of Don's medical expenses were paid by worker's compensation. In June of 1991, the Coxes' lawsuit was settled and a check, payable to both parties, was issued in the amount of $74,742.82.
In early July, literally within days of receiving the personal injury settlement check, the parties used a portion of the settlement funds to purchase a home, titled in the names of both parties, in Washington C.H., Ohio for $48,500. The balance of the settlement funds were used for improvements on the property, payment of debts, and other living expenses. The parties lived in the marital residence until August of 1996, when they separated. Evidence within the record indicates that that property is now worth $75,000.
Kay filed a complaint for divorce in August of 1996. Don filed a timely answer and counter-claimed for divorce and an award of spousal support. A final hearing before a magistrate commenced on February 26, 1997 and continued on April 18, 1997 and July 23, 1997, during which time the magistrate heard testimony from the parties regarding how the marital residence should be divided.
The parties also filed the deposition of Mr. David Deutsch, the attorney who handled their personal injury lawsuit, with the magistrate. In his deposition, Deutsch testified that Kay's loss of consortium would have "clearly been a part of the settlement," but admitted that he had no way of knowing the exact monetary value of her claim. He estimated that her claim might be worth anywhere from five to ten percent of the total settlement amount.
On December 3, 1997, the magistrate issued a "Decision" attempting to trace the proceeds of the personal injury settlement funds and divide the property accordingly. The magistrate awarded all right, title, and interest in the marital home to Don subject to a judicial lien in Kay's favor of approximately $9,500 plus eight percent interest. All other property was divided to the parties' satisfaction. However, the magistrate denied Don's request for spousal support.
On December 10, 1997, the magistrate, pursuant to an oral request by Kay's counsel, issued a journal entry in which he stated that he "desired to reconsider portions" of his earlier Decision. On December 15, 1997, Don filed objections to the magistrate's decision, contending that the magistrate erred both in computing Kay's interest in the marital home, and in failing to award him spousal support. The magistrate issued a "Supplemental Decision" on January 9, 1998, in which he stated that he had "reviewed the pleadings, exhibits and the earlier Decision" and found "no compelling reason to modify the earlier Decision."
The record reveals that on January 13, 1998, Kay's legal counsel filed a "Request for Transcript" of the proceedings. On February 11, 1998, Kay's counsel filed objections to both the magistrate's Decision and the Supplemental Decision. One week later, on February 18, 1998, Don's legal counsel also filed his "Request for Copy of Transcript."
On April 10, 1998, the trial court issued a judgment entry in which it overruled in part, and sustained in part, the objections of the parties. In its entry, the court cited to portions of the transcript and the deposition filed, and stated that:
 [b]ecause of the conflicting nature of evidence concerning this issue, the court cannot determine what part of the settlement was for loss of consortium, lost wages, or pain and suffering. The proceeds were commingled and used to purchase the marital residence. This commingling does not destroy the identity of separate property (citations omitted). However, the burden of identifying or tracing this distinct property is placed on the party claiming that the property is separate (citation omitted). Since neither party has met this burden of proof with respect to the settlement proceeds, the court finds that the residence, purchased with these funds and titled in the names of the parties, is marital property.
Accordingly, the trial court ordered that the marital home be sold and the proceeds divided equally between the parties. Appellant then filed his notice of appeal, citing two assignments of error.
In his first assignment of error, appellant contends:
 THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING THE MAGISTRATE'S DECISION WITHOUT HAVING AS PART OF THE RECORD AN ORIGINAL TRANSCRIPT, OR HOLDING ADDITIONAL PROCEEDINGS PURSUANT TO RULE 53 (E) (4) (b) OF THE OHIO RULES OF CIVIL PROCEDURE.
Appellant argues that because an original transcript of the proceedings was not filed with the trial court until after he filed his notice of appeal, the trial court abused its discretion in rendering its April 10, 1998 judgment entry without first reviewing the transcript. Additionally, appellant argues that the trial court's refusal to hold additional hearings pursuant to Civ.R. 53 was an abuse of discretion. We find both of appellant's contentions without merit.
It is evident from our review of the trial court's judgment entry that the trial court reviewed both the transcript of the proceedings and the deposition filed by the parties, as the entry is replete with citations to both. Additionally, our review of the record indicates that the transcript was ordered by both parties well before the trial court's April 10, 1998 judgment entry, and was therefore in existence and available for the trial court's review. While it is entirely possible that an original transcript was never file-stamped at the trial court level prior to issuance of the April 10, 1998 judgment entry, our review of the record leaves no doubt that the trial court did indeed review the transcript prior to rendering its decision.[1]
As for appellant's argument that the trial court abused its discretion in not holding additional hearings pursuant to Civ.R. 53 (E) (4) (b), we find that the rule provides that the trial court "may adopt, reject, or modify the magistrate's decision" or "hear additional evidence" (emphasis added). The use of the word "may" within the rule is permissive, rather than mandatory. Accordingly, we find that the decision about whether or not to hear additional evidence lies directly within the sound discretion of the trial court. Given the amount of evidence contained within the record before this court, we cannot say that the trial court's decision not to hear additional evidence was an abuse of discretion. Therefore, we find appellant's first assignment of error without merit and it is overruled.
In his second assignment of error, appellant contends:
 THE TRIAL COURT'S JUDGMENT FINDING THAT IT COULD NOT DETERMINE WHAT PART OF THE HUSBAND'S PERSONAL INJURY SETTLEMENT WAS FOR LOSS OF CONSORTIUM, LOST WAGES, OR PAIN AND SUFFERING, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In this assignment of error, appellant alleges that the trial court should have let the magistrate's decision stand undisturbed, as the magistrate "had no difficulty making a determination regarding these issues." Appellant argues that the magistrate was correct in determining that bulk of the proceeds from the parties personal injury lawsuit was the separate property of appellant. However, we disagree.
An appellate court cannot reverse the judgment of a trial court on a manifest weight of the evidence assignment of error if there is some competent, credible evidence supporting the trial court's judgment. C.E. Morris Company v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279. This standard rests on a strong presumption that the judgment of the trial court was correct because the "trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80. We note that "[t]his distinction may have less application when the trial judge has committed those functions to a magistrate, but the presumptionthat the trial court was correct in its judgment exists,nonetheless." Loges v. England (Nov. 13, 1998), Montgomery App. No. 15606, unreported, at 4-5 (emphasis added). The reason for this is as follows:
 A magistrate is but an arm of the court, and while the magistrate's decision carries a presumption of correctness the trial court is not required to adopt it. In any matter referred to a magistrate pursuant to Civ.R. 53 the court must make its own independent review of the record before it enters judgment on the claims for relief presented. Division (E) (4) — (a) of Civ.R. 53 provides that after that review the court may adopt the magistrate's decision as its own order, absent objections filed by one of the parties. If objections are filed, the court must rule on them as a part of its independent review, but it must perform that review nonetheless. The court's review of the record is de novo; no standard of review is imposed by Civ.R. 53. Therefore, the power of the court to adopt, reject, or modify the decision of the magistrate or any findings or conclusions that the magistrate enters in whole or in part, is plenary power.
Id. at 3.
Thus, we find that the trial court was under no obligation to allow the magistrate's decision to stand simply because the magistrate "had no difficulty making a determination regarding these issues." In fact, for the trial court to do so, in light of the foregoing case law, would have been for the trial court to engage in a dereliction of its plenary review powers.
Separate property is defined as including, among other things, "compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets." R.C.3105.171(A)(6)(a)(iv). Thus, as a general rule:
 a spouse's * * * right to an award of damages for personal injury, which occurred during a marriage, is non-marital property, except to the extent that the settlement constitutes compensation for past wages, medical expenses and lost earnings during the marriage. This latter area constitutes marital property subject to an equitable division by the trial court.
Everhardt v. Everhardt (Feb. 6, 1987), Lucas App. No. L-86-060, unreported, at 17-18. Furthermore, we note that R.C. 31105.171- (A) (6) (b) provides that "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, exceptwhen the separate property is not traceable" (emphasis added). Ohio case law clearly establishes that the "burden of persuasion is still on the one who seeks to have the co-mingled [sic] property declared separate to establish that the property is traceable to him or her." deLevie v. deLevie (1993), 86 Ohio App.3d 531,536.
This court is not without guidance in the division of personal injury awards in divorce proceedings. In Modon v.Modon (1996), 115 Ohio App.3d 810, the Ninth District Court of Appeals determined that:
 the trial court's inability to determine what amount of [the personal injury] proceeds was payment for loss of wages and Mrs. Modon's loss of consortium as opposed to compensation for Mr. Modon's permanent injuries, pain and suffering, and medical expenses, was fatal to his claim.
Id. at 815. The court went on to state:
 [b]y choosing to receive the settlement proceeds in one check, the Modons commingled their separate and marital property. In order for Mr. Modon's separate property to maintain its separate character, he had to trace it into the check. In order to do so, he had the burden of convincing the trial court how much of the check was compensation for his permanent injuries, pain and suffering, and medical expenses.
Id. at 816.
Similarly, in this case, the parties received their personal injury proceeds in a check payable to both parties, thereby commingling their separate and marital property. Accordingly, the burden of proof was on appellant to convince the trial court that his separate property was traceable. The evidence presented only definitively traced a portion of the settlement proceeds, and then traced them into a marital home purchased and titled in the names of both parties. Additional evidence revealed that the parties used the remainder of the proceeds for joint debts and improvements to the marital residence. Even the attorney who handled the parties' lawsuit could not determine what amount of the personal injury proceeds would have been separate as opposed to marital property.
In light of the foregoing, we find that the trial court's conclusion that it could not "determine what part of the settlement was for loss of consortium, lost wages, or pain and suffering" was not against the manifest weight of the evidence. Furthermore, the trial court was justified in determining that appellant had failed to carry his burden of proof on the issue. Appellant's second assignment of error is overruled.
Judgment affirmed.
KOEHLER and WALSH, JJ., concur.
[1] While we recognize that during the pending of this appeal, counsel for appellee filed with this court an affidavit from the trial court's court reporter indicating that the original transcript of this matter was made available to the trial judge "for his review in preparing his Judgment Entry dated April 10, 1998," our review is limited to evidence contained within the record below. Accordingly, we do not base our disposition of this assignment of error upon the court reporter's affidavit.